**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-3311-WJM

DWAN R. PETTI,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

---

**ORDER REVERSING DECISION OF ADMINISTRATIVE LAW JUDGE**

---

    This matter is before the Court on review of Defendant Commissioner of the Social Security Administration Andrew M. Saul's (the "Commissioner") decision denying Plaintiff Dwan Petti's ("Plaintiff") application for disability insurance benefits. For the reasons set forth below, the ALJ's decision is reversed, and the matter is remanded for an immediate award of benefits.

**I. BACKGROUND**

    Plaintiff was born on July 15, 1969, and was 42 years old on the alleged disability onset date of January 1, 2012. (Administrative Record ("R.") (ECF No. 9) at 125–26.) Plaintiff graduated from high school, and previously worked as an office manager. (R. at 125, 161.)

    Plaintiff applied for disability insurance benefits on January 17, 2012. (R. at 125–26.) Plaintiff alleged that she was disabled due to the following conditions: bipolar

disorder, depression, post-traumatic stress disorder, fatigue, and partial liver failure. (R. at 71.) Her application was initially denied on May 29, 2012. (R. at 78.)

After the initial denial of benefits, Plaintiff requested a hearing and appeared before Administrative Law Judge Kathryn D. Burgchardt (the "ALJ"). (R. at 530.) The ALJ denied Plaintiff's application. (R. at 615–32.) Plaintiff appealed the ALJ's decision. On January 20, 2016, the Court vacated the ALJ's denial of Plaintiff's application and remanded for further proceedings. (R. at 588–601; *see also Petti v. Colvin*, 2016 WL 232775 (D. Colo. Jan. 20, 2016) (*Petti I*).)

On remand, the same ALJ again denied Plaintiff's application. (R. at 527–41.) Again, Plaintiff sought judicial review of the denial. On September 27, 2018, U. S. District Judge Phillip A. Brimmer vacated and remanded the ALJ's decision, finding that the ALJ had failed to accord the proper weight to the opinions of Plaintiff's treating physicians. (R. at 896–912; *see also Petti v. Colvin*, 2018 WL 4659110 (D. Colo. Sept. 27, 2018) (*Petti II*).)

## II. THE ALJ'S DECISION

On August 23, 2019, on the second remand from this Court, the action was assigned to a different ALJ. (R. at 857.) This second ALJ also determined that Plaintiff was not entitled to disability insurance benefits. (*Id.*)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of January 1, 2012, through her date last insured of March 31, 2013. (R. at 844.)

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from "the following severe impairments: bipolar disorder, depression, post-traumatic

stress disorder (PTSD), and liver disease." (R. at 845.) The ALJ did not find that any other claimed condition was a severe impairment. (*Id.*)

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any impairments listed in the Social Security regulations. (R. at 845–46.) Rather, the ALJ found that Plaintiff had "moderate difficulties" with regard to concentration, persistence, or pace. (R. at 846.) The ALJ found that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation. (R. at 845–46.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). The ALJ concluded that Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] was limited to no complex tasks, defined as SVP 2 or less, and defined as rote, repetitive tasks. She was unable to deal with the general public and could have only occasional interaction with coworkers.

(R. at 847.) At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any of her past relevant work. (R. at 855.)

At step five, the ALJ found that, through the date last insured, other jobs existed in the national economy that Plaintiff could have performed with her assessed RFC. (R. at 856.) Those jobs purportedly included kitchen helper, hand packager, and hospital cleaner. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and was not entitled to benefits. (R. at 857.) Plaintiff filed this action, her third judicial review appeal, on November 22, 2019. (ECF No. 1.)

3

### III. LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### IV. ANALYSIS

Plaintiff advances two primary grounds for reversal: (1) the ALJ erred as a matter of law in weighing her treating physicians' opinions, and (2) the ALJ erred by finding Plaintiff did not meet or equal Listing 12.04 for Bipolar Disorder with Depression. (ECF No. 11 at 6, 16–22.) Finding that Plaintiff's first argument provides a basis for remand, the Court need not address her alternative Listing argument. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).

### A. Treating Physician Opinions

Plaintiff's treating psychiatrist, Dr. Jeffrey Harazin, treated her from 2006 through 2016. (ECF No. 11 at 6.) Plaintiff's treating psychologist, Dr. James Mylar, treated her from 2010 through 2012. (*Id.*) Each physician rendered the opinion that Plaintiff's mental illnesses caused a marked restriction in activities of daily living, extreme restriction in social functioning, extreme difficulty in maintaining concentration, persistence and pace, and three or more episodes of decompensation in the relevant time period. (R. at 384–86; 522–26.) The ALJ, however, accorded "limited weight" to the physicians' assessments of Plaintiff's medical condition. (R. at 854.)

The analysis of how much weight to accord a treating physician opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.[1]

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 99-2p, 1996 WL 374188 (July 2, 1996)).

A finding that a treating source's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical

---

[1] Dr. Mylar is a psychologist and not a physician. (ECF No. 14 at 7.) Nevertheless, the treating physician rule applies to treating psychologists. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173–74 (10th Cir. 2005) (applying the treating physician rule to an ALJ's analysis of a treating psychologist's opinion).

5

opinions are still entitled to deference and must be weighed using all of the factors[1] provided in 20 C.F.R. § 404.1527 . . . ."  SSR 96–2p, 1996 WL 374188 (July 2, 1996).  If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so.  *Watkins*, 350 F.3d at 1301.

As stated, the ALJ accorded limited weight to Drs. Harazin and Mylar's opinions.  (R. at 855.)  After determining that the doctors' opinions were well-supported by medically accepted clinical and diagnostic techniques, the ALJ discussed whether the opinions were contradicted by medical evidence in the record, ultimately concluding that they were not.  (*Id.*)

The ALJ based his conclusion on several grounds.  First, he noted that Dr. Harazin's treatment notes did not list all of Plaintiff's symptoms as reported in his opinion, thereby rendering the opinion "directly contradictory to his clinic notes."  (R. at 852.)  Second, the ALJ disagreed with the physicians' opinions that Plaintiff had decompensated three times during the relevant period because she was only hospitalized once.[2]  (*Id.*)  Third, the ALJ found that because Plaintiff occasionally performed basic household duties and spent time with her family, and was not hospitalized, Dr. Harazin's opinion that she had a marked or extreme limitation was

---

[1] The six factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 CFR 404.1527(c)(2)(i-vi).

[2] The ALJ appears to imply that any episode of decompensation must necessarily have resulted in Plaintiff's hospitalization.  (R. at 853 (stating that the fact that Plaintiff was not hospitalized again "suggests she was stable enough to remain in outpatient care").)  He notably fails, however, to support that implicit contention with a citation to anything in the medical literature or medical evidence in the record.

unsupported by evidence. (R. at 853–54.) Fourth, the ALJ found Dr. Mylar's corresponding opinion was unsupported for the same reason. (R. at 854.) Fifth, the ALJ noted that the agency doctor examined Plaintiff and found no severe impairments, indicating that Drs. Harazin and Mylar's opinions were "not entirely supported by the record" based on the "disagreement by the qualified medical sources in this case." (*Id.*) Accordingly, the ALJ assigned limited weight to the physicians' opinions. (*Id.*)

The Tenth Circuit has held that the language "limited weight" indicates that an ALJ is effectively rejecting a medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The Court finds that the ALJ effectively rejected the medical opinions of Drs. Harazin and Mylar in this case. To be sure, an ALJ may choose to reject a treating physician's medical opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). However, the ALJ may do so "only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *Id.* (emphasis in original).

In rejecting the opinions of Drs. Harazin and Mylar, the ALJ did not cite contradictory medical evidence. (*See* R. at 852–54.) Instead, the ALJ rejected the opinions of the treating doctors because, in his opinion, Plaintiff's treatment plan was too conservative to indicate a severe condition. (R. at 853–54 ("[I]f Dr. Harazin and Dr. Mylar had really believed [Plaintiff] was having such marked and extreme limitations in all areas of mental functioning, they would have suggested she be hospitalized.").) The ALJ also emphasized that, on occasion, Plaintiff spent time with her family, played board games, attended church, "drove places, went shopping, and did some basic

chores around the house." (R. at 845.) The ALJ concluded that, based on these activities, that Plaintiff did not have severe impairments. (R. at 846.)

It is well established that an ALJ may not "substitute his own medical opinion for that of a disability claimant's treating doctors." *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004). The ALJ predicates his conclusion on the proposition that a person with Plaintiff's supposed impairments would be unable to participate in the activities that she did, and that Plaintiff's physicians would have placed her on a different treatment plan if her condition were as severe as she claims. (R. at 852–54.) Thus, on appeal the Commissioner asks the Court to accept the ALJ's interpretation of the medical evidence over that of Plaintiff's medically trained, and long-term treating, physicians. To do so would directly conflict with Tenth Circuit law, and the Court firmly rejects the Commissioner's invitation that it ignore the fact that the ALJ's conclusion is nothing more than the opinion of a lay, non-medically trained person. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004).

The Court finds that "the ALJ overstepped his bounds into the province of medicine, which is reversible error," *Petti II*, 2018 WL 4659110, at *5 (citing *Langley*, 373 F.3d at 1121) (internal quotation marks omitted). As in *Petti I* and *Petti II*, the ALJ's flagrant substitution of his own lay judgment and speculation for that of Plaintiff's long-term treating doctors is clear error, warranting reversal of his decision.

## B.     Instructions on Remand

Because the Court concludes that the ALJ did not follow the correct legal standards in considering the opinion of Plaintiff's treating physicians, the Court reverses

8

the ALJ's decision. On this basis, the Court must either reverse the ALJ's decision and remand for an immediate award of benefits, or remand for further fact-finding.

Given that this case has already previously been remanded twice, and thus has had the benefit of factual development and briefing for three hearings, and has now undergone three appeals, the Court concludes that there is little to be gained from additional fact-finding. As a consequence, it will reverse the decision of the ALJ and remand for an immediate award of benefits. "The Secretary is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir.1993) (internal quotation marks and citation omitted).

The Tenth Circuit has indicated that "outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989). Reversal and remand for an award of benefits is appropriate when "the record fully supports a determination that [a plaintiff] is disabled as a matter of law and is entitled to the benefits for which he applied." *Id*. The Court has the discretion to award benefits when a remand for additional fact-finding would not serve a useful purpose "but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (quoting *Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987)).

The Court finds that a remand in this case for yet additional fact-finding would not serve any useful purpose, given that the lengthy record of Plaintiff's numerous hearings and appeals, spanning as they do nearly a decade, in its current state already fully supports a determination that the Plaintiff is disabled as a matter of law and is entitled to

9

the benefits for which she has applied. Finally, the Court finds in addition that there is no need for further proceedings other than for a remand to the Commissioner for an immediate award of benefits. *Sisco*, 10 F.3d at 746.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The decision of the Commissioner denying Plaintiff Dwan Petti's application for disability insurance benefits is REVERSED;

2. This case is REMANDED for an immediate award of benefits **as of January 1, 2012**;

3. The Clerk shall enter judgment in favor of Plaintiff and against the Commissioner and shall terminate this case; and

4. Plaintiff shall have her costs, if any, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 3rd day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge